UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES                                                          Plaintiff

v.                                                    Criminal Action No. 3:22-cr-79-RGJ

ISHIA REYES                                                           Defendant

* * * * *

**MEMORANDUM OPINION AND ORDER**

Defendant Ishia Reyes ("I. Reyes") renews his motion to dismiss for "Speedy Trial Violations." The motion seeks dismissal for statutory Speedy Trial Act violations and a Sixth Amendment Speedy Trial violation. [DE 188]. The United States responded in opposition. [DE 189]. For the reasons below, the Renewed Motion to Dismiss [DE 188] is **GRANTED WITHOUT PREJUDICE.**

**BACKGROUND**

The Court incorporates here by reference the factual background set forth in the Magistrate Judge's Report and Recommendation ("R&R") [DE 115] denying I. Reyes's motion to suppress [DE 83] and in the memorandum opinion and order overruling I. Reyes objections and accepting that R&R [DE 143].

Additional procedural background is necessary. This case was originally declared complex on December 21, 2022, pursuant 18 U.S.C. §§ 3161(h)(7)(A), 3161(h)(7)(B)(ii), based on "the voluminous amount of discovery already provided by the United States," "the anticipation of providing additional discovery," and "the nature of the prosecution and complexity of the facts." [DE 54 at 205]. On March 15, 2023, I. Reyes moved for production of exculpatory evidence. [DE 60]. On May 3, 2023, the Court "granted [the motion for production] to the extent that it seeks

disclosure of these materials and denied to the extent it seeks immediate disclosure thereof." [DE 62].

On June 20, 2023, I. Reyes filed an unopposed motion for extension of time to file his motion to suppress which the Court granted. [DE 66; DE 67]. The motion asserted that "Counsel for [I.]. Reyes has diligently reviewed all discovery provided and has determined that discovery items necessary to prepare the Motion to Suppress are missing" and that "the United States has confirmed the existence of the missing items and that they will provide them to counsel for [I.] Reyes." [DE 66 at 231]. Another unopposed motion for extension of time was filed on July 26, 2023, and granted on July 28, 2023, stating that "Counsel for the United States is working to provide some of the missing items to counsel for Mr. Reyes and confirm that other requested items do not exist." [DE 76 at unavailable page ID #; DE 78]. A third motion for extension of time was filed on August 25, 2023, and granted on August 29, 2023, stating that missing discovery was just obtained from the United States and defense counsel needed an opportunity to review and complete preparation on the motion. [DE 81 at unavailable page ID #; DE 82]. The motion to suppress was finally filed September 11, 2023. [DE 83].

The United States then requested two extensions of time to respond, which were granted, and the response was finally filed October 16, 2023. [DE 84; DE 85; DE 86; DE 89; DE 87]. Two extensions for reply were also requested and granted with the matter being fully briefed on November 13, 2023. [DE 90; DE 91; DE 92; DE 94; DE 95]. The matter was ultimately submitted to the Magistrate Judge who denied the motion to suppress on R&R to the Court dated October 10, 2024. [DE 115]. Objections were filed November 8, 2024. [DE 121].

On March 18, 2025, I. Reyes filed a motion to dismiss for violation of the Speedy Trial Act as no ruling on the motion to suppress had been made. [DE 129]. The Court overruled I. Reyes'

objections to the R&R on March 26, 2025, and denied the motion to dismiss on April 16, 2025. [DE 143; DE 150]. This matter was then transferred to the undersigned on July 11, 2025, for purposes of trial. [DE 161]. I. Reyes now renews his motion to dismiss. [DE 188].

## DISCUSSION

When a Court is deciding a renewed motion, the court is "free to reconsider or reverse its decision for any reason." *Russel v. GTE Gov't Sys. Corp.,* 141 F. App'x 429, 436 (6th Cir. 2005).

### I.        Speedy Trial Act

The Speedy Trial Act ("STA"), 18 U.S.C. § 3161, "requires dismissal of a criminal case, with or without prejudice, if the defendant is not tried seventy days after his indictment or the date he first appears in court, whichever date last occurs." *United States v. Jenkins*, 92 F.3d 430, 438 (6th Cir. 1996) (citing *United States v. Mentz*, 840 F.2d 315, 324–26 (6th Cir. 1988)). The seventy-day period is not unqualified. The Act authorizes periods of time which are excludable, either as expressly stated in the Act or by a finding of the trial court that the interests of justice warrant such exclusion. *United States v. Morata*, No. 3:14CR-82-CRS, 2016 WL 4535664, at *1 (W.D. Ky. Aug. 30, 2016). Excludable delays permit the extension of the seventy-day "try by" period, but such extensions are not without limitation. *Id.*

A defendant moving for dismissal has the burden of providing a *prima facie* case that the Act had been violated, which merely requires a simple showing that more than seventy days have passed since the indictment or first appearance, whichever is later, and trial has not yet begun. *Id*; *United States v. Richardson,* 681 F.2d 736, 738 (6th Cir. 2012). If the defendant does so, the burden then shifts to the government, which must prove by a preponderance of the evidence that once excludable time is factored in, the seventy-day period has not passed. *Morata*, 2016 WL 4535664, at 81 (citing *Mentz*, 840 F.2d at 326).

3

The STA provides that several periods are to be excluded when determining whether the seventy-day speedy-trial clock has run. *See* § 3161(h). Five general rules of exclusion are relevant to this case.

The first period of exclusion is the time between the filling of a pre-trial motion and the day on which a district court becomes able to dispose of that motion. This includes "the entire time from the filing of the motion through the date of the hearing" as well as "all the days during which [the district court] is waiting to receive information necessary to decide a pending pre-trial motion," including the parties' filings regarding that motion. *Jenkins*, 92 F.3d at 438–39 (citations omitted). This time also includes the "period after a pretrial motion during which the court is awaiting the preparation of a transcript needed to rule on the motion." *United States v. Polan*, 970 F.2d 1280, 1285 (3d Cir. 1992).

Second, the "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court" is also excludable. 18 U.S.C. § 3161(h)(1)(H). If a district court refers a motion to a magistrate judge, there is one thirty-day period of exclusion while the motion is under advisement by the magistrate judge, and then a separate thirty-day period of exclusion that begins once the district court has received the magistrate judge's report and recommendations and all other materials required by the district court to review the report and recommendation. *United States v. Andress*, 943 F.2d 622, 626 (6th Cir. 1991) (holding that when a party submits its objections to a report and recommendation, "the district court has before it all the materials it is due to receive [and] a new period of excludable delay begins; *viz*., thirty days . . . within which a motion may be kept under advisement").

Third, "[t]he filing of a superseding indictment does not affect the speedy trial clock for offenses charged in the original indictment." *Sylvester v. United States*, 110 F. Supp. 3d 738, 747 (E.D. Mich. 2015) (collecting cases), *aff'd* 868 F.3d 503 (6th Cir. 2017). However, "[a]ll defendants who are joined for trial generally fall within the speedy trial computation of the latest codefendant." *Henderson v. United States*, 476 U.S. 321, 323 n.2 (1986). Because of this, "absent evidence of bad faith or unreasonable delay, courts have generally restarted the speedy trial clock if the superseding indictment adds new defendants to the case." *Sylvester* 110 F. Supp. 3d at 747; *see also United States v. Chen Chiang Liu*, 631 F.3d 993, 998 (9th Cir. 2011) (recognizing that "not allowing the STA clock to restart upon the addition of a codefendant might result in the STA being used as a vehicle for requiring the government to prosecute codefendants piecemeal") (citing *United States v. King*, 483 F.3d 969, 973 (9th Cir. 2007)); *United States v. Harris*, 566 F.3d 422, 429 (5th Cir. 2009) (restarting the speedy trial clock upon the arraignment of a newly-joined codefendant). After the issuance of a superseding indictment adding a defendant, 18 U.S.C. § 3161(h)(6) excludes from the speedy trial clock a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted."

Fourth, when calculating the length of an excludable period, "both the date on which an event occurs or a motion is filed and the date on which the court disposes of a motion are excluded." *United States v. Cope*, 312 F.3d 757, 777 (6th Cir. 2002) (quoting *United States v. Yunis*, 723 F.2d 795, 797 (11th Cir. 1984)).

Finally, if a district court finds that the "ends of justice" are served by excluding the delay attendant to a continuance, that delay is excludable so long as the district court sets forth its reasons for finding that the ends of justice require the exclusion of that time. § 3161(h)(7)(A). However,

"ends of justice" continuances are *not* permitted for "all time." *United States v. Zedner*, 547 U.S. 489, 503 (2006). The Sixth Circuit does permit open ended continuances, but only if they are "reasonable" in duration. *United States v. Richardson*, 681 F.3d 736, at 743 (6th Cir. 2012).

In determining whether an "ends of justice" continuance should be permitted, a court may look to see if the "case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law" that it would be unreasonable to prepare for trial within the confines of the STA. § 3161(h)(B)(ii). This process is also known as declaring the case complex. *See Zedner*, 547 U.S. at 497. To comply and properly exclude this time from the STA, a court must set forth, "in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." § 3161(h)(7)(A). Without "on-the-record findings, there can be no exclusion" of time. *Zedner*, 547 U.S. at 507.  *Zedner* thus "underscores the statutory requirement that district courts make on-the-record findings to justify the decision to grant end-of-justice continuances." *Richardson*, 681 F.3d at 739. Although a contemporaneous statement is best practices, the court "need only give the reasons no later than the ruling on the defendant's motion to dismiss on Speedy Trial Act grounds." *United States v. Crawford*, 982 F.2d 199, 204 (6th Cir. 1993).

The Sixth Circuit has stressed that ends of justice "continuance[s] should not be granted lightly." *Id.* To comply with the requirements of § 3161(h)(B)(ii), courts must give a reason, in the record, demonstrating that the court "gave [ ] thought as to whether the continuance would serve the ends of justice *before* granting" another continuance. *Id.* at 205. If not, the "statement[s] of reason or findings of fact" may be insufficient to grant a continuance by a district court. *Id.* (holding that "[b]ecause the district court neither explicitly granted a continuance nor explained

6

the reasoning that would have motivated a conclusion that a continuance would serve the ends of justice" those days were not excluded from the STA). If that occurs, the time is not properly excluded under the STA, and therefore, a dismissal may be warranted. *Id.*

 If the Court finds a violation of the STA, the Court will conduct a separate balancing analysis to decide whether the dismissal should be with or without prejudice. "The [STA] does not specify whether dismissal should be with or without prejudice, nor does it contain a default presumption one way or the other." *United States v. Robinson*, 389 F.3d 582, 586 (6th Cir. 2004). Congress provided for three factors that a court *must* consider in that decision. Those are, "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." *United States v. Taylor*, 487 U.S. 326, 333 (1988).

An individual's constitutional right to a speedy trial requires a separate test. The Sixth Amendment guarantees, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The Supreme Court has set forth a four-part balancing test to determine if a defendant's Sixth Amendment rights have been violated. "(1) whether the delay was uncommonly long; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether prejudice resulted to the defendant." *United States v. Bass*, 460 F.3d 830, 836 (6th Cir. 2006) (citing to *Barker v. Wingo*, 407 U.S. 514 (1972)). All factors must be considered together and with any relevant circumstances as well. *Id.* If the Court finds that a violation of I. Reyes' Sixth Amendment rights have been violated, the Court must dismiss "with prejudice." *United States v. Jackson*, 473 F.3d 660, 664 (6th Cir. 2007).

## II.    Renewed Motion to Dismiss for Speedy Trial Act Violations

I. Reyes filed a renewed motion to dismiss the charges against him for violations of the STA, and his Sixth Amendment rights to a speedy trial. I. Reyes makes two primary arguments. First, he alleges that after briefing concluded for his motion to suppress, "*NOTHING HAPPENED* for 268 days," he was "not granted a hearing during all that time, and was not brought to the court for any status updates or any other purposes." [DE 188 at 1188]. Thus, he alleges a violation of the STA. [*Id.*]. Second, I. Reyes alleges that there was a "delay of evidence" relating to "body cam footage" from the event. [*Id.* at 1139]. He requests that the Court dismiss the charges against him violating both the STA and his Sixth Amendment Right to a speedy trial. [*Id.*]. In response, the United States argues that I. Reyes' arguments are nearly identical to his previous arguments, which were denied by the Court, and as to his new argument about a delay of evidence, the new body camera videos "show nothing of relevance to the upcoming trial," as there still is no body camera footage of his arrest. [DE 190].[1] The United States has the burden of showing the STA has been met.

It is notable that neither party provides the Court an analysis of the STA clock during the pendency of the litigation. While I. Reyes asserts that 268 days passed without action, presenting at least a barebones assertion that more than 70 days had passed potentially violating the STA, the United States does not provide specific evidence or analysis "that once excludable time is factored in, the seventy-day period has not passed." *Morata*, 2016 WL 4535664, at 81 (citing *Mentz*, 840 F.2d at 326). Both the motions and responses are conclusory and lacking in facts and analysis.

---

[1] In response to I. Reyes' previous motion to dismiss for STA violation, the United States argues that the various motions under consideration by the Court when the motion to dismiss was filed warranted exclusion of time under the STA and that the matter was declared complex during that timeframe. [DE 145].

*1.  Statutory Analysis*

To determine whether a violation of the STA has occurred, the Court first examines each time period after I. Reyes first appearance in Court to determine if seventy non-excludable days have passed through the date of this order. As stated in previous orders by the Court, this matter had been found to be complex. [DE 54]. I. Reyes' counsel agreed to this designation after consultation with his client. [*Id.*; DE 53].

*i.  Time Before the Case Was Declared Complex.*

The STA clock does not start until the last defendant has entered their plea of not guilty. *Henderson*, 476 U.S. at 323 n.2 (stating that "[a]ll defendants who are joined for trial generally fall within the speedy trial computation of the latest codefendant"); *United States v. Levon*, 127 F. App'x 865, 869 (6th Cir. 2005) (holding that "the date on which the defendant pleaded not guilty" started the STA clock.). Here, Defendant Taylor was the last defendant to enter a plea of Not Guilty on August 19, 2022.  [DE 30]. And although the United States filed a superseding indictment on August 17, 2022 [DE 24], "[t]he filing of a superseding indictment does not affect the speedy trial clock" unless new defendants are added. *Sylvester,* 868 F.3d at 508–09 (collecting cases). No new defendants were added in the superseding indictment. Therefore, through August 19, 2022, the STA clock was at zero days.

Additionally, on August 19, 2022, the Court issued a pretrial Order setting the trial date, "[a]fter discussion, and by agreement of counsel." [DE 30 at 167]. Therefore,  the time from the order through the first set trial date of October 11, 2022[2] is excluded from the STA.

---

[2] The Court notes that although DE 30 states that the first trial date was set for October 13, 2022, this was due to a clerical issue. The corrected trial date, October 11, 2022, was set out in DE 32, which acknowledges the issue.

On October 5, 2022, Defendant Pruitt filed a motion for trial continuance. [DE 44]. And on October 7, 2022, the Court granted the motion and remanded the trial date. [DE 45]. Further, the Court set a telephonic conference for November 29, 2022. [*Id.*]. And lastly, the Court made an on the record finding that "in the interest of justice, this Court finding that the delay necessary for review of discovery and preparation for trial outweighs the interest of the defendant and the public in a speedy trial," [*Id.* at 189]. The Court stated that due to the "volume of discovery material," trial within the STA would be impossible. [*Id.*]. Therefore, all time between October 5, 2022, and November 29, 2025 is excluded and the STA clock was zero days through November 29, 2025.

On November 29, 2022, the Court held a telephonic status conference. [DE 52]. During this conference, as memorialized in the Court's order, the Court held that the period from November 29, 2022, *through March 8, 2023*, was excludable pursuant to 18 U.S.C. § 3161(h)(7)(A); (h)(7)(B)(i). The "ends of justice served by the continuance outweigh the best interests of the public and Defendants in a speedy trial. 18 U.S.C. § 3161(h)(7)(A)" [DE 52 at 202]. Further, the Court held that the "failure to grant the continuance would likely make a continuation of the proceeding impossible or result in a miscarriage of justice, due to the need for additional time to allow defense counsel to review discovery, for the parties to continue their discussions toward a resolution, for trial preparation should the parties not reach a resolution and for defense counsel to otherwise counsel the Defendants. 18 U.S.C. § 3161(h)(7)(A); (h)(7)(B)(i)." [*Id.*]. As a result, the STA clock remained at zero days.

> *ii.* Time During which the Case was Declared Complex for Discovery, Nature of Prosecution, and Complexity.

On December 22, 2022, the Court, with no objection from any Defendant, declared this matter complex. The Court ordered that:

> Due to the voluminous amount of discovery already provided by the United States and the anticipation of providing additional discovery, the parties are in agreement that the matter should be declared complex in light of the nature of the prosecution and complexity of the facts. On that basis, the court declares this matter COMPLEX, finding that the interests of justice served by this designation affording additional preparation time outweigh the interests of the Defendants and the public in a speedy trial. 18 U.S.C. §§ 3161(h)(7)(A), 3161(h)(7)(B)(ii).

[DE 54 at 205].

On March 8, 2023, the Court held another telephonic status conference. [DE 59]. There, the Court reiterated that the parties were still reviewing discovery and the Court would be continuing the matter through May 10, 2023. The reasons for declaring the case complex, the voluminous discovery and necessary time to review, still applied as of this date. Thus, from March 8, 2023, through May 10, 2023, the time is excludable from the STA. 18 U.S.C. §§ 3161(h)(7)(A), 3161(h)(7)(B)(ii). The STA clock remained at zero days.

On May 10, 2023, and on May 16, 2023 [DE 63], the Court held two status conferences. There, the Court discussed the procedural process of the case. [DE 63]. Discovery was still ongoing, and the parties were preparing to file motions to suppress. Therefore, in the interests of justice, and as the reasons still apply for declaring the case complex, the time between May 10, 2023, and the conclusion of briefing on the motion to suppress are otherwise excluded from the STA clock. Thus, through November 13, 2023, the STA clock remained at zero days. 18 U.S.C. §§ 3161(h)(7)(A), 3161(h)(7)(B)(ii).

### iii.    Time After Briefing on Motion to Suppress is Complete.

With briefing complete and discovery complete, the Court was able to dispose of I. Reyes' motion to suppress beginning on November 14, 2023. As a result, the Court had thirty days of excludable time ending on December 14, 2023, as no complexity designation is applicable to this period. 18 U.S.C. § 3161(h)(1)(H).  No action was taken on the case that would exclude time from

the STA from December 15, 2023 through February 22, 2024. Thus, 69 days are added to the STA

clock, bringing the STA clock to 69 days.

Beginning on February 23, 2024, an influx of motions came into the Court:

- February 23, 2024: Motion for detention hearing by I. Reyes. [DE 98].
- March 21, 2024: This above matter was referred to Magistrate Judge Edwards.
- April 16, 2024: Motion to reopen detention hearing by Defendants Pruitt, S. Reyes, & Taylor. [DE 99].
- April 18, 2024: Order setting detention hearing for I. Reyes April 29, 2024. [DE 100].
- April 23, 2024: Motion for release of custody by Defendant Pruitt. [DE 101].
- May 3, 2024: Order denying I. Reyes motion to reopen detention. [DE 103].
- May 6, 2024: Order setting detention hearing for other Defendants [DE 104].
- May 8, 2024: Motion for medical treatment by S. Reyes. [DE 105].
- May 13, 2024: Order denying Defendants motion to reopen detention hearing. [DE 106].
- May 21, 2023: Response by United States as to S. Reyes motion for medical treatment. [DE 107].
- June 10, 2024: Time for S. Reyes to file a reply lapsed to her motion for medical treatment.
- June 30, 2024: Motion to revoke detention order by I. Reyes. [DE 108].
- July 14, 2024: Response by United States to I. Reyes motion to revoke detention order. [DE 109].
- July 24, 2024: Order setting oral arguments for revoking detention order. [DE 110].
- August 5, 2024: Order denying as moot S. Reyes motion for medical treatment. [DE 111].
- August 7, 2024: Order referring Defendants Motion to Suppress to Magistrate Judge Edwards. [DE 112].
- August 15, 2024: Order denying motion to revoke by I. Reyes. [DE 113].

The above time period is all excludable. Motions were continually filed within thirty-day

thresholds, restarting the clock as appropriate. 18 U.S.C. § 3161(h)(1)(H). Therefore, as of August

15, 2024, the clock remained at 69 days.

The last order listed above was denied on August 15, 2025. [DE 115]. And, as of August

7, 2024, the Court referred the pending motions to suppress to Magistrate Judge Edwards. [DE

112]. When a district court refers a motion to a magistrate judge, there is a thirty-day period of

exclusion while the motion is under advisement by the magistrate judge, and then a separate thirty-day period of exclusion that begins once the district court has received the magistrate judge's report and recommendations and all other materials required by the district court to review the report and recommendation. *Andress*, 943 F.2d at 626. Therefore, the clock did not start again until September 6, 2024, thirty days after the Court referred the motion to Magistrate Judge Edwards. Thus, the time between September 6, 2024, and until the Order was published on October 10, 2024, is non-excludable (outside of the actual day the Order was published). Therefore, another 34 days are added to the STA clock. Thus, as of October 10, 2024, the STA clock was at 103 days.

After Magistrate Judge Edwards submitted her R&R on October 10, 2024, [DE 113-116] the Court had a thirty-day exclusion period for review of the R&R. *Andress*, 943 F.2d at 626. Objections were due by November 7, 2024. But on November 8, Defendant I. Reyes filed an objection to the R&R, starting another 30-day period of exclusion. *Id.* The United States did not file a response to the objection. Therefore, through December 8, 2024 the STA clock remained at 103 days.

From December 9, 2024 through January 9, 2025, there are no excludable filings or other circumstances during this period. Therefore, this period added another 30 days to the STA clock. The STA clock was 133 days.

On January 10, 2025, Defendant I. Reyes filed an unopposed motion to for an extension of time relating to his objections to Magistrate Judge Edwards' Report and Recommendation. This excluded the next thirty days from the STA clock. 18 U.S.C. § 3161(h)(1)(H). As of February 9, 2025, the STA clock remained at 133 days.

For a period of one day, February 10, 2025, no excludable actions occurred. Therefore, this date added another one day to the STA clock. The STA clock was at 134 days.

On February 11, 2025, Defendant I. Reyes filed a motion to sever from his co-defendants [DE 123]. On February 18, 2025, The United States responded. [DE 124]. Further, on February 18, 2025, Defendant I. Reyes also filed for a motion for disclosure of certain *Brady* materials [DE 125]. The United States replied on the same day. [DE 126]. I. Reyes replied on February 19, 2025. [DE 128]. On February 26, 2025, I. Reyes filed for a motion for a speedy trial. [DE 128]. On March 18, 2025, he filed for a motion to dismiss based on speedy trial violations. [DE 129]. On March 19, 2025, the United States filed a second superseding indictment (no new defendants were added). [DE 130]. On March 26, 2025, the Court ruled on the motion for disclosures and I. Reyes' motion for a speedy trial. [DE 140; DE 141]. On March 28, 2025, the United States responded to the motion to dismiss for speedy trial violations and I. Reyes replied on April 3, 2025. [DE 145; DE 146]. The Court denied the motion on April 16, 2025. [DE 150]. Therefore, through April 16, 2025, no non-excludable days accrued and the STA clock was at 134 days.

From April 17, 2025, and through April 24, 2025, no excludable days occurred. This adds another 7 days to the STA clock. This brought the STA clock to 141 days.

            *iv.*      Time After Setting of September 30, 2025 Trial Date.

On April 25, 2025, on the Court's own motion and by agreement of counsel, the Court entered an order setting a telephonic status conference for April 29, 2025. During that telephonic status conference with all counsel, and "[a]fter discussion, and by agreement of counsel," the Court set a trial date for September 30, 2025, and a pretrial conference schedule leading up to the trial date. [DE 154, entered on May 5, 2025]. Therefore, the time from the entry of the order, through the September 30, 2025 trial date is excluded from the STA clock. Thus, through September 30, 2025, the STA clock was at 141.

Although the time is excluded through September 30, 2025, it is notable that on June 13, 2025, Defendants filed three separate motions. A supplemental motion to suppress [DE 155], and two motions in limine. [DE 156; DE 157]. These motions would have stopped the STA clock until disposition had the time not already been excluded as noted above. The briefings on those motions were not finalized until August 6, 2025, and a motion to dismiss for vindictive prosecution was filed by I. Reyes on August 22, 2025. [DE 183]. This again, would have stopped the STA clock. The Court issued an opinion on that matter, and the other pending motions, either by written opinion or from the bench by September 4, 2025. [DE 186; DE 191]. Notably, on September 2, 2025, Defendant I. Reyes filed the current motion. [DE 188].

On July 11, 2025, the Honorable Judge Simpson transferred this matter to the undersigned. [DE 161]. This did not impact the STA clock. In this Court's order accepting the matter, the Court noted that "his matter was previously declared complex on December 22, 2022 [DE 54]." [DE 162]. Further, on July 14, 2025, the Court moved the trial date to October 2, 2025. [DE 162]. As previously discussed, the Court will exclude the time from the order, through the trial date set for October 2, 2025, from the STA. On August 5, 2025, the United States returned a Third Superseding Indictment. [DE 171]. However, because no new defendants were added, the STA clock did *not* restart. *Sylvester*, 868 F.3d at 508.

On August 29, 2025, following the final pretrial conference and discussion with the parties, the Court adjusted the trial date slightly from October 2, 2025 to October 7, 2025. [DE 186]. As previously discussed, the Court will exclude the time from the order, through the trial date set for October 7, 2025, from the STA. The STA clock remained at 141 days and the parties have continuing filing pre-trial briefing and other motions. This has also stopped the STA clock for the current time. On October 1, 2025, the Court held a telephonic status conference. [DE 203]. On

October 3, 2025, the Court continued the trial date until December 2, 2025. In excluding the time from the date of the order through the trial date from the STA, the Court stated:

> "Pursuant to 18 U.S.C. § 3161(h)(7)(B)(iv)the Court can exclude time from the Speedy Trial Act, for the ends of justice, if denying the continuance would "deny counsel for the defendant" the "reasonable time necessary for effective preparation." Counsel has been at the hospital for "19 days consecutive" and has been unable to effectively prepare for trial during this time. Tr. of S.C. Hr'g at 3, United States v. Reyes 3:22-cr-79 (Oct. 1, 2025). The Court finds that Counsel's family medical emergency would deny him the "reasonable time necessary for effective preparation." 18 U.S.C. § 3161(h)(7)(B)(iv). Therefore, the ends of justice are served by granting this continuance, and the time will be excluded from the Speedy Trial Act. 18 U.S.C. § 3161(h)(7)(A).

[DE 205 at 1230]. Therefore, as of the date of this order, no further days have been added to the STA. The STA clock, however, remains at 141 days.

As of today, there are 141 non-excludable days from the Speedy Trial Act. This is above the statutory requirement of 70 days. When there are more than 70 non-excludable days from the STA, the STA has been violated. *United States v. Moss*, 217 F.3d 426, 429 (6th Cir. 2000). The remedy for a violation, as discussed further below, is dismissal of the case. 18 U.S.C. 18 U.S.C. § 3162(a)(1). However, the "Speedy Trial Act does not specify whether dismissal should be with or without prejudice, nor does it contain a default presumption one way or the other." *Robinson*, 389 F.3d at 586.

### 2. *Constitutional Analysis*

Next, the Court addresses I. Reyes' argument that his constitutional right to a speedy trial has been violated. As an initial matter, I. Reyes does not present facts and analysis to support this argument. As the United States Court of Appeals for the Seventh Circuit has infamously stated, "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam); *see also Codrington v. Dolak*, 142 F.4th 884, 897 (6th Cir. 2025) (6th Cir. July 9, 2025) (noting its approval of this Seventh Circuit philosophy); *Dean-Lis v.*

16

*McHugh*, 598 F. App'x 412, 415 (6th Cir. 2015) (also citing the Seventh Circuit quote with approval). "Mere allusion or reference is not enough; the issue must actually be raised with a minimum level of thoroughness." *Seifert v. Pa. Hum. Relations Comm'n*, 301 F. App'x 194, 196-97 (3d Cir. 2008); *see also United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").  Thus, the Court could deny I. Reyes' argument as waived given his perfunctory reference to a constitutional argument end its analysis here.

In examining a Sixth Amendment Speedy Trial violation the Court must examine the following: "(1) whether the delay was uncommonly long; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether prejudice resulted to the defendant." *Bass*, 460 F.3d at 836 (citing to *Barker* 407 U.S. 514). All factors must be considered together and with any relevant circumstances as well. *Id.* Thus, the Court must "engage in a difficult and sensitive balancing process" between the four factors. *Barker*, 407 U.S. at 533. The Court will only examine the last three factors if a delay is "presumptively prejudicial" which occurs when the timeline approaches "one year." *United States v. Schreane*, 331 F.3d 548, 553 (6th Cir. 2003). And it is "possible for a delay that does not violate the STA to run afoul of the Sixth Amendment's guarantee of a speedy trial." *United States v. Casas*, 425 F.3d 23, 34 (1st Cir. 2005). However, it is an extremely "high bar" for a defendant to meet. *United States v. Schuster*, 135 F.4th 1037, 1055 (6th Cir. 2025).

Because the Court must engage in a "difficult and sensitive balancing process," it should be noted that the Court's decision here does not suggest how this Court might rule on similar

motions from the other named Defendants in this matter. *Barker*, 407 U.S. at 533; *United States v. Allen*, 86 F.4th 295, 305-06 (6th Cir. 2023) (performing two separate *Barker* tests as appropriate for Defendants, Michael Davis & David Allen, who both alleged Sixth Amendment violations); *Doggett v. United States*, 505 U.S. 647, 670 (1992) (Thomas, J., dissenting) (stating that *Barker* focuses on "whether an individual *who has been deprived of a liberty protected by the* Clause is entitled to relief") (emphasis in original).

### a.   Length of delay

The first factor, length of delay, "serves two functions." *Schuster*, 135 F.4th at 1048. The first function is the "threshold requirement." *Schreane*, 331 F.3d at 553. The length of delay is "measured from the earlier of the date of indictment or arrest to the defendant's trial." *Bass*, 460 F.3d at 836. The Court must determine if one year has passed since the earlier of either of those events. *Id.* Second, if the threshold of one year is met, the total length of the delay then serves "as a measure of the severity of the prejudice suffered by an accused." *Rice v. Warden, Corr. Inst.*, 786, F. App'x 32, 34 (6th Cir. 2019). But there are no "bright-line rules for measuring the impact of the delay's length." *Schuster*, 135 F.4th at 1048.

I. Reyes was arrested on August 4, 2022. [DE 1]. Over three years have passed. Therefore, despite the majority of this time being excludable under the STA, this matter is "presumptively prejudicial," and the Court will "continue our examination of the remaining factors." *Schreane*, 331 F.3d at 553.

### b.   Reason for Delay

"The Supreme Court has established a hierarchy of justifications for presumptively prejudicial delay." *United States v. Watford*, 468 F.3d 891, 902 (6th Cir. 2006).

A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be

considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531. "The government and, for that matter, the trial court are not without responsibility for the expeditious trial of criminal cases." *Barker*, 407 U.S. at 527, n. 27. The purpose of the second factor is to determine who is more at blame, the prosecuting sovereign or the Defendant. *See Maples v. Stegall*, 427 F.3d 1020, 1026 (6th Cir. 2005); *Schuster*, 135 F.4th at 1049 ("[A]n essential aspect of determining reasonability under *Barker* is assigning responsibility for delays. Two possible responsible parties exist: the defendant and the prosecuting sovereign, which includes its prosecutors and courts."). Additionally, "[t]he *Barker* framework initially assigns the responsibility for the time necessary to adjudicate defense motions to the defendant." *Schuster*, 135 F.4th at 1050.

The next question then becomes "whether the time taken to adjudicate pretrial motions is reasonable or justified" by the court. *Id.* If a delay becomes unreasonable, then the cause of that delay is "attributed to the district court." *Id.* However, Sixth Circuit "[p]recedent does not provide clear guidance for evaluating when a district court unreasonably delays in its adjudication of pretrial motions." *Id*. For example, in *Bass*, the Sixth Circuit found the case so complex, that a six-year delay *was* reasonable because it involved a "large-scale drug and murder conspiracy that, at one point, encompassed seventeen defendants." 460 F.3d at 837. In *Maples*, the Sixth Circuit found a delay that consisted of twenty-five months, and bad faith by the United States, was enough to be unreasonable and warranted a dismissal. 427 F.3d at 1034. And although not binding upon this Court, in *United States v. Casas*, the First Circuit found that although a forty-one-month delay caused "great concern" it was outbalanced by 350 pretrial motions and 60 defendants, and thus no Sixth Amendment violation occurred. 425 F.3d at 34-35. Additionally, courts can consider similar

19

factors in the context of the STA, which the Court discussed analyzed above. *Moss*, 217 F.3d at 429.

I. Reyes makes two conclusory arguments, as noted above. First, I. Reyes contends that after his motion to suppress was fully briefed and ready for disposition by the Court, "*NOTHING HAPPENED* for 268 days." [DE 188 at 1138]. He contends that the suppression briefing was a "was a straight forward suppression issue with no particularly complex issues." [*Id.*]. Therefore, "the delay in itself was an extreme violation of Mr. Reyes' Constitutional rights." [*Id.*]. And lastly, I. Reyes alleges that "after a personal friend of Mr. Reyes was able to get body cam footage from 10 different officers who were on scene when the arrest warrant was served on Mr. Reyes, the United States has been forced to admit that they were in error when they asserted there was no body cam footage from the event." [*Id.* at 1139]. Outside of the body cam footage, which the United States alleges is not relevant, the United States does not respond to the arguments. Instead, the United States points to the previous Court order declaring this case complex and thus removing it from any STA violation. [DE 189 at 1146]. The United States does not touch upon the Constitutional violations, outside of the related body cam footage.

I. Reyes is incorrect that "*NOTHING HAPPENED* for 268 days." As described in more depth above, this is an overstatement. Between the time of I. Reyes's reply in his motion to suppress briefing on November 13, 2023, and I. Reyes' own filing to revoke his detention on February 23, 2024, I. Reyes is correct that his motion was pending, with no other motions pending, for roughly three months. The motion was referred to Magistrate Judge Edwards almost nine months later. In *Schuster*, the Sixth Circuit found that it was "unreasonable for the district court to take more than eighteen months" to rule on certain motions, "even if they presented issues of some

complexity." *Id.* Here, the time the motion remained unruled on is not as extreme as in *Schuster* and the motion to suppress presented several issues.

Here, roughly 35 of the 40 months since I. Reyes appeared were validly excluded from the STA due to the case being declared complex. And as previously noted, I. Reyes agreed to this designation. [DE 53]. For this factor to point toward I. Reyes, he does not need to demonstrate that the district court was purposefully "attempt[ing] to delay the trial in order to hamper [his] defense." *Barker*, 407 U.S. at 531. Instead, a court's mistake can be due to negligence or overcrowding to be enough. *Schuster*, 135 F.4th at 1052. This delay is due more to the motion not being resolved with no purposeful ill intent by either party. *Id.* Thus, this second factor, slightly favors Defendant I. Reyes. Still, the factor is afforded "less weight" than it otherwise would because of the lack of ill intent. *Id.* (holding that although the district court delay weighs in favor of the defendant, it is a "neutral" reason and is accorded "less weight").

### c.   *Whether the defendant asserted their right to a speedy trial*

A "defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531-32. But the Defendant must "do more than merely assert his right." *Schuster*, 135 F.4th at 1052. The Court can look to "timing, force, frequency" and "surrounding litigation conduct." *Id.* Through this litigation, I. Reyes has filed one motion for a speedy trial [DE 128] and two motions to dismiss based on speedy trial violations. [DE 129; DE 188]. In his first motion, which he filed before the Court set a new trial date [DE 128 at 626], he stated that he "is ready for trial and objects to any further delays." [*Id.*]. Since I. Reyes has asserted his rights for a speedy trial, the United States filed a second, and later third, superseding indictment. [DE 130, DE 171]. Even with that, I. Reyes' attitude toward trial has not changed. In fact, at the latest Final Pretrial Conference, he was the only Defendant to object to a continuance of the trial. Tr. Of Final Pretrial Conf. Hr'g at 5-6, *United*

*States v. Reyes et al.,* 3:22-cr-79 (Aug. 26, 2025) (Counsel for I. Reyes asserting that he wants to "object" to continuing the trial date and that he "waited a long, long time" for rulings). However, I. Reyes did not assert his rights to a speedy trial until two and a half years into this matter. In fact, it was already after 134 STA non-excludable days have occurred. I. Reyes also consented to this case being declared complex, which took it out of the strict confines of the STA as the reasons for complexity remained present through the matter. [DE 53; DE 54]. And on April 29, 2025, the Court held a telephonic status conference with all counsel, and "[a]fter discussion, and by *agreement of counsel*," set a trial date for September 30, 2025, and pretrial conference schedule leading up to the trial date. [DE 154, entered on May 5, 2025] (emphasis added).

In *Bass*, the Sixth Circuit held that that filing motions to dismiss based on speedy trial rights is enough for this factor to favor the Defendant. 460 F.3d at 837. However, more recently, the Sixth Circuit has held Defendants to a *higher* standard. *Schuster*, 135 F.4th at 1052 (stating that asserting your right to a speedy trial is "not enough to place the third factor in [defendant's] favor"); *United States v. Allen*, 86 F.4th 295 (6th Cir. 2023) (per curiam), and *United States v. Williams*, 753 F.3d 626, 633 (6th Cir. 2023). In *Williams*, the Sixth Circuit held that "stop-and-go conduct" and "numerous pretrial motions" that impeded that case factored against the Defendant because those actions "cast[s] doubt on the sincerity" of the Defendant even if the Defendant has asserted their right to a speedy trial. 753 F.3d at 633. Therefore, this Court finds this factor neutral based on recent case law from the Sixth Circuit. Although I. Reyes has pushed for a speedy trial, it has come later in the proceedings and after "numerous pretrial motions." And although he is asserting his speedy trial rights now, I. Reyes could have pushed for a trial date much earlier in this litigation, as he did at the last pre-trial conference, and asked the Court to rule on his pending motions, but instead continued to file other pretrial motions that could "cast doubt on the sincerity"

of his speedy trial assertion. *Williams*, 753 F.3d at 633.  This factor is neutral, or more likely, weighs against I. Reyes. *Schuster*, 135 F.4th at 1053-54 (holding that because of Schuster's "mixed signals," it "strips his assertion" of much force and therefore "doomed" the third *Barker* factor).

### d.   Whether prejudice has resulted

"When the delay is lengthy and attributable to bad faith by the government, no showing of prejudice is required." *United States v. Brown*, 169 F.3d 344, 350 (6th Cir. 1999). But if the United States has shown "reasonable diligence [] pursu[ing] a defendant" the Defendant must show the alleged delay caused actual prejudice. *Id.* However, "negligence [by the United States] lies between these two extremes." *Id.* at 351. "While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him." *United States v. Mundt*, 29 F.3d 233, 236 (6th Cir. 1994).

"The Supreme Court has identified three defense interests that a court should consider in a speedy trial case when determining whether a defendant suffered actual prejudice: (1) oppressive pretrial incarceration; (2) anxiety and concern of the accused; and (3) the possibility that the defense was impaired." *Bass*, 460 F.3d at 837 (citing to *Barker*, 407 U.S. at 532). I. Reyes has not argued any anxiety or concern of the accused, but instead, his arguments primarily focus on the first and third factor.

### i.   Oppressive pretrial incarceration

Regarding the first factor, the Court is of course sympathetic to the concerns of I. Reyes and his detention. The Sixth Circuit has held that a three-year delay may be prejudicial but may also not be nonprejudicial. That is, a three year delay falls in-between and is more fact dependent. *See United States v. Jackson*, 473 F.3d 660, 667 (6th Cir. 2007) (holding a two year delay was not prejudicial); *see also, Brown*, 169 F.3d at 351 (holding a five year delay prejudicial). However, in

23

*Barker,* the Supreme Court stated that "prejudice was minimal" despite an "extraordinary" five-year delay. 407 U.S. at 533-34. Thus, it is much more fact intensive review than examining the length. Length must also be examined with the other factors. *Schuster*, 135 F.4th at 1054. As stated, the Court "must" consider all factors "together with any relevant circumstances." *Id.* at 1052. Also, I. Reyes has not demonstrated, outside of actual incarcerated, any *oppression* from the incarceration. The Court will move onto the next potential interest.

### ii.    Anxiety and Concern

I. Reyes has not demonstrated any anxiety nor concern and thus the Court will not focus on this interest. Therefore, the primary focus of this factor will focus on interest three. *Bass*, 460 F.3d at 836 (stating that if interest one and two are either not argued or demonstrated, the focus will be on interest three).

### iii.    Impairment of the Defense

The third and last factor is the most vital in this analysis, "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S at 532. I. Reyes make three points to argue prejudice. First, he contends the length of his detention has prejudiced him. [DE 188 at 1139]. However, the Sixth Circuit has already rejected this reasoning in other cases. *See Schuster*, 135 F.4th at 1055 (holding that in regards to the last *Barker* factor, "Schuster's general reliance on a lengthy period of incarceration cannot move the needle in his direction.") Second, he contends that the witnesses and case are getting older, which could cause issues for the jury. He states, "this case is very old, and memories of witnesses get more unreliable the older a case gets." [DE 188 at 1138-39]. Although those facts are likely true, in *Bass,* the Sixth Circuit rejected an identical argument. There, the Sixth Circuit stated that, the "[d]efendant, however, does not state what testimony any missing witnesses could have provided,

24

which witnesses' memories were affected, or how his own memory problems affected his defense. Accordingly, without a further showing, it is impossible for this court to discern prejudice from Bass's vague and unsupported assertions." *Bass*, 460 F.3d 838. However, the Sixth Circuit has also held that "it is not always necessary for a defendant to pinpoint with specificity how the delay prejudiced his defense." *Brown*, 169 F.3d at 351 (citing to *Doggett*, 505 U.S. at 648 (1992) (holding that an affirmative showing of actual prejudice was not necessary because the delay was six years). But, in those situations, "*presumptive* prejudice cannot alone carry a Sixth Amendment claim." *Id.* (emphasis added). Thus, if I. Reyes *only* provided the unreliability of witnesses as his only evidence, this factor would likely be heavily favored towards the United States. *Bass*, 460 F.3d 838. However, I. Reyes does allege another theory of the United States' negligence.

Third, I. Reyes contends that a "personal friend of Mr. Reyes was able to get body cam footage from 10 different officers who were on the scene" of the arrest. [DE 188 at 1139]. Still, as of today, there is neither footage from the actual arrest, nor can I. Reyes "confirm the existence of such footage." [*Id.*]. In response, the United States contends that "these videos show nothing of relevance to the upcoming trial." [DE 189 at 1146]. In previous briefing before the Court discussing the bodycam footage, the United States asserted they were "unaware that those body worn camera videos existed until review of Reyes' reply." [DE 177 at 1098]. And later, the "United States by no means attempted to nor intended to create 'obfuscation' regarding the existence of any body camera videos or other evidence." [*Id.*]. And although there may be "no body cam footage of [the] arrest" there is body cam footage from the scene. [DE 167 at 986]. I. Reyes was not able to obtain this footage presumably until July 2025, almost three years into this criminal matter against him. [*Id.*]. Although this conduct does not appear to be in bad faith by the United States per their response, it is still akin to negligence. *See Brown*, 169 F.3d at 350-51.

Here, I. Reyes does not specifically contend how this footage has prejudiced him and his defense. But "such a failure does not preclude finding prejudice." *Doggett*, 505 U.S. at 655 (holding that "impairment of one's defense is the most difficult form of speedy trial prejudice to prove."). In *Brown,* the Sixth Circuit held that based upon a five and a half year delay, and that the delay was partially attributable to the United States, the United States did not sufficiently rebut a presumption of prejudice. 169 F.3d at 351 (citing to *Mundt*, 29 F.3d at 236). Here, this matter has exceeded three years since the arrest of the Defendants, and two months before trial, I. Reyes finally received body cam footage, which he allegedly, and the United States does not dispute, has been trying to receive for some time. [DE 167]. However, I. Reyes and the United States both concede that there may be "no body cam footage of the arrest." [DE 167 at 986]. Nor does I. Reyes demonstrate how this late discovery of body cam footage has prejudiced his defense, besides a speculation that the United States is hiding more. A speculation of prejudice, however, is insufficient. *Brown*, 169 F.3d at 351. Thus, because I. Reyes cannot demonstrate more than speculative prejudice from this footage, and lack of other bodycam footage that may or may not exist, the Court holds that the showing by I. Reyes is insufficient constitute prejudice Therefore, I. Reyes has failed to demonstrate prejudice and this factor sides with the United States.

>      e.   *Balancing the factors*

As stated above, the *Barker* factors determine who is to blame for the delay, with neither party being a "blameless party." *Wilson v. Mitchell*, 250 F.3d 388, 395 (6th Cir. 2001). But the Court must determine who is "*more*" to blame. *Doggett*, 505 U.S. at 651. Based upon the above factors, with delays contributable to the Defendant, the Court, and the United States, the prosecuting sovereign has not violated I. Reyes' Sixth Amendment rights. That is, the Court cannot find that I. Reyes clears the "high bar" to obtain the "unsatisfactorily severe remedy" of dismissal

with prejudice. *Schuster*, 135 F.4th 1056; *Barker*, 407 U.S. at 522. Balancing the four factors, the United States did not violate I. Reyes' Sixth Amendment right to a speedy trial. The Court should have done more to move the case forward, and the Court was likely the "primary cause" of the delays. *Schuster*, 135 F.4th 1056. But still, the Sixth Amendment does not "impose a code of judicial and prosecutorial best practices" but instead "imposes a consideration of the totality of the circumstances." *Id*. I. Reyes does not meet this "high bar." *Id.* I. Reyes' alleged violation of his Sixth Amendment right to a speedy trial is denied.

### 3. *Dismissal Analysis*

Notwithstanding the Court's holding regarding I. Reyes' Sixth Amendment argument, the Court did find that a violation of the Speedy Trial Act occurred. Therefore, the Court must examine whether the dismissal should be with or without prejudice. 18 U.S.C. § 3162(a)(1). As stated, "[t]he Speedy Trial Act does not specify whether dismissal should be with or without prejudice, nor does it contain a default presumption one way or the other." *Robinson*, 389 F.3d at 586. However, Congress did provide for three factors that a court must consider in that decision. Those are, "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." *Taylor*, 487 U.S. at 333. In the Sixth Circuit, if a district court does not "set forth written findings with regard to these factors [the trial court] has abused its discretion and will be reversed." *United States v. Pierce*, 17 F.3d 146, 148 (6th Cir. 1994).

### a. *Seriousness of the Offense.*

The first factor the Court must examine is the seriousness of the offense. *Taylor*, 487 U.S. at 333. The charges alleged by the United States include that I. Reyes had intentionally possessed, with the intent to distribute at least 50 grams or more of methamphetamine, 40 grams or more of

fentanyl, and a mixture of cocaine. [DE 171 at 1003-1011]. Additionally, I. Reyes has been charged with the unlawful possession of a firearm by a prohibited person. [*Id.* at 1012]. The drug offenses alone would be sufficient to constitute a serious offense by the Sixth Circuit, which would favor reprosecution. *Moss*, 217 F.3d at 430; *United States v. Kottmyer*, 961 F.2d 569, 572 (6th Cir. 1992). Moreover, the Sixth Circuit has also held that possession of a firearm by a felon to be a serious offense. *See United States v. Carnes*, 309 F.3d 950, 957 (6th Cir. 2002). Thus, this factor favors a dismissal without prejudice and allowing for reprosecution by the United States.

### b. *Facts and circumstances of the case that led to dismissal.*

In the second factor, the Sixth Circuit instructs us to see if the delay resulted from "prosecutorial bad faith," whether there was "any attempt to take advantage of the delay" and whether the defendant "can show a pattern of negligence on the part of the United States Attorney's Office." *Sylvester* 868 F.3d at512.None of these factors are present here. Neither party, the United States nor I. Reyes, is largely at fault for the delay. That is, the "violation resulted not from prosecutorial bad faith nor from any attempt to take tactical advantage of a delay." *Pierce*, 17 F.3d at 149. When that occurs, the Sixth Circuit has stated that it is within the trial court's discretion to determine whether the dismissal should be with or without prejudice. *Id.*

The Court recognizes that its own delay, more than any party, led to the violation of the STA. The Sixth Circuit has upheld lower court decisions to dismiss an indictment without prejudice when the Court acknowledges and takes "primary responsibility" for the delay. *Id.* Therefore, without any prosecutorial misconduct, this Court will follow suit here and recognize their fault as the "primary responsibility" for the delay in this case and take ownership. *Id.*

A period of time passed before the ruling on a pending motion to suppress. Still, during that period, other filings were still occurring, and this case was moving forward in other respects.

28

That is, the Court did not simply sit idly by for an entire year as alleged by I. Reyes. Hearings were held, and other opinions were ordered. Further, a delay that was due "mostly to carelessness on the part of itself" is *not enough* to dismiss an indictment with prejudice. *Kottmyer*, 961 F.2d at 572-73. Additionally, the Court does not find any "intentional dilatory conduct or a pattern of neglect by the government" which would have "altered the balance." *Id; Taylor*, 487 U.S. at 339. This Court recognizes their own mistakes in moving this case forward. But the Court does not find any abuse or intentional misconduct by the United States. Because of that, the Court holds that this factor also favors dismissal without prejudice, allowing for reprosecution by the United States.

>     c.  *Impact of reprosecution on the administration of this chapter and on the administration of justice.*

The last factor is the impact on reprosecution to avoid an abuse by the prosecution in lengthy delays. "The main considerations that courts have taken into account when examining this factor are whether the defendant suffered actual prejudice as a result of the delay and whether the government engaged in prosecutorial misconduct that must be deterred to ensure compliance with the Act." *United States v. Howard*, 218 F.3d 556, 562 (6th Cir. 2000). Here, I. Reyes has failed to demonstrate how the delay has prejudiced him or his defense. He has not pointed to anything in record, or any evidence. The Court recognizes that I. Reyes has remained in custody pending trial, but "detention before trial is not unusual and does not necessarily mean that dismissal with prejudice is appropriate." *United States v. Mann*, 536 F.Supp. 3d 173, 181 (W.D. Mich. 2021). Additionally, there is no evidence of "prosecutorial misconduct that must be deterred to ensure compliance with the Act." *Pierce*, 17 F.3d at 149. Thus, because the "blame [is] shared with the court" the Court finds that dismissal with prejudice "would only affect the prosecutor in this case and would not serve the interests of the public." *Kottmyer*, 961 F.2d at 573. The Sixth Circuit has

held in similar situations, where no bad faith or misconduct has occurred, that dismissal without prejudice is well within the trial court's discretion. *Id.*

Therefore, on balance, dismissal should be without prejudice. The Court takes a majority of the fault for their part in the delay against I. Reyes. Overall, based on the above findings regarding the first and third factor, coupled with the lack of intentional delay or pattern of misconduct by the United States, the balance supports a holding for dismissal without prejudice. *Id.*

## CONCLUSION

For the reasons stated, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that I. Reyes's Renewed Motion to Dismiss for Speedy Trial Violations [DE 188] is **GRANTED** and I. Reyes is **DISMISSED WITHOUT PREJUDICE** from the matter.

Rebecca Grady Jennings, District Judge
United States District Court

October 17, 2025